And our final case of the day is United States v. Pettis. Mr. Patton. Thank you, Your Honor. Mr. Pettis had a reasonable expectation of privacy in the apartment that he was leasing to store his household goods in after his... Mr. Patton, let me tell you what my problem is. Suppose he has a reasonable expectation of privacy and suppose that there was no probable cause for the warrant. Under Lyon, suppression is not permitted unless any reasonable police officer would have known there was no probable cause. And here we have one district judge and three appellate judges of the state of Illinois all holding that there was indeed probable cause. Now even if they're wrong, how was any reasonable police officer supposed to know they were all wrong? Well, Your Honor, of course if the police make a false statement in the affidavit to get the search warrant, then the Lyon good faith exception does not apply. And here, as we argued in our motion, I think one of the critical misleading and just simply not true parts of the warrant is that it is paragraph 5, where it says, Complainant, an Affian officer, John Lieb, states that on this date at this time, officers located Kevin Pettis in the common area 407 South State. Officers advised he may have been inside his apartment prior to their arrival. Neither of those are true. He was seen in some in the common area of this apartment building. I think any reasonable person reads that location and says, hey, that's where he got taken into custody. He got a block and a half away. And it's important because of the compressed time frame. Let me ask my question in a more concrete way. Sure. Has this court ever held in a case where the district judge found that a warrant was in fact supported by probable cause that the conditions of Lyon for suppression have been satisfied? Has this to be the first? And has any other circuit ever held that? Well, I understand that the district court did not find there were any materially false statements in the affidavit. And the district court found probable cause. My question is, is there any case where the district court has found probable cause where this court, or you can name any other circuit, has held that the conditions for suppression under Lyon were satisfied? Ever? No, but if there, if you find a there's a material misstatement in that, if you take that material misstatement out of the affidavit, the affidavit does take it out. It is still supported by probable cause. Actually, he did not. You may disagree with that. You may disagree with the district judge's finding that there was no intentional misstatement. But my general question is, has anybody ever said that after a district judge has found probable cause, that nonetheless, the evidence had to be suppressed because the officers should have known there was no probable cause? And my answer is no. But then my answer, that's not my argument. It may not be your argument, but it is the hurdle you have to get over in order to prevail. Judge Bruce's opinion, his order, never addresses our allegation that the statements that he was located in the common areas, and the statement that officers advised he may have been inside his apartment prior to their The brief part that talks about the merits does not mention that at all. And we argued in our motion in two different places that those were false statements. And so, obviously, because Judge Bruce didn't find that there were, he just didn't address it, he didn't find that if you take that out, there's not probable cause, because he apparently considered it, because he never said he wasn't considering it. Because if you take that out, then you have, there's a shooting, and not only if you take it out, if you put the accurate information in, there's a shooting, and nine minutes later, Mr. Pettis is arrested a block and a half away from the apartment building. If you take out, he was located, which again, the only way a judge reading this would interpret that is that's where the police officers took him into custody. You take that out, and the statement that officers advised he may have been inside his apartment prior to their arrival implies somehow that they had some evidence that somebody saw something to support that. When in fact, it's not true, and in fact, Officer Lieb, in explaining where he got that from, that came from another officer calling out over the radio, and this was documented in what was government's exhibit one at the hearing, and it's attached as the last exhibit in the government's appellate brief. They call it their dispatch ticket. One of the officers simply said, we're looking for the gun. He may have had time to go into his apartment, and Officer Lieb said that this one officer's statement that Mr. Pettis may have had time to go into the apartment was the basis for Officer Lieb writing, officers advise he may have been inside his apartment prior to their arrival, and it's attached as the last exhibit in the government's appellate brief. When in fact, it's not true, and in fact, it's intentionally misleading. So there's an indication of the record that an officer observed Mr. Pettis, Mr. Patterson around the common area, right? Correct. Yes. It's a U-shaped apartment complex, and the officer's driving along the road that basically looks into the U, and there's just a big open grass area. The officer spotlights the area, sees somebody, does not identify him as Mr. Pettis when he sees that. You've got to drive past the apartment building to get into the parking lot for the building. The officer then sees the SUV in the parking lot, that's when he feels the hood, feels that it's warm, then kind of traces where he sees the person walking. Here's the call out that we have Pettis, and Pettis is a block and a half away. So there's no doubt that the officer, then when he got up to where Pettis was in custody, the officer said, hey, I think that's the guy that I saw. So they did see him there, but because the argument is, well, he had enough time to do all of this stuff, the more you try and say, oh, we got him right outside the common area of his apartment, so therefore he's got time, I think is deceptive because the time it takes for him to walk a block and a half, that's included in this nine minutes between the call coming in and Mr. Pettis getting arrested a block and a half. And the whole idea of, well, he may have been in the apartment is based on the lapse of time. Well, the more time you take out of that, the less probable it becomes that he went inside and put the gun in there. And so the whole point of Frank's is that if the officers make false statements to the judge to get the warrant, that the officers don't get to then come back and say under Leon, well, hey, we went and got a warrant the way you told us to do, so give us a break. Well, when you cheat to get the warrant, you don't get to then say, oh, well, we had a warrant, so we have good faith. And that is our argument. And I'll save the rest of my time for rebuttal. Mr. Baum. Thank you, Your Honor. May it please the court. I don't believe that Frank's intentionally false allegation was part of the briefing on why this affidavit wasn't a valid one and couldn't be relied on in good faith. The brief says that it was so lacking in probable cause that that's the reason why no reasonable officer could rely on the warrant. And of course, as this court's pointed out, multiple judges have already said there was sufficient probable cause, so no officer would be incorrect to rely on that warrant. A couple of the falsehoods, though, I'd like to address these so-called falsehoods. The officer did identify that the person he saw in the courtyard was Kevin Pettis. Of course, he didn't identify him when he initially saw him. There's no evidence that he knew who Kevin Pettis was at that moment. But when he sees him moments later and says, that's the man I saw, it's not misleading to say he was located in the common area. If I say I see the picture on the bench, it is not misleading to say that's because it is located on the bench. It's not a misleading statement. The second supposedly misleading statement is that the officer said he had time to be in the apartment. Well, of course, we know that is true because the firearm with his DNA, which dispelled the shell casing at her apartment, was found in that apartment. So it's not misleading to say he had time because, of course, he did have time. There was, I think, a nine-minute window between when the call came in at about 319 and 328 when they're on the scene. So he had time to be in the apartment. And it's clearly documented, if you look at Government's Appendix 2, at 334, there's even a notation that says officers said the subject had time to be inside of his apartment. Is there anything that indicates when, I guess, the call was shots fired or something like that? From the time the shot was fired versus when they called? I believe she said they got into an argument and she said, I'm going to call the police. And that's when he, I think it was as she's getting her phone out to call the police when the shots fired. So I think it's in very close proximity to that 318 time call. Yes, Your Honor. And he obviously had a car. He was in a, she said he's in a tan-colored Tahoe and she gives the first number, I think it's a letter followed by four numbers. She wasn't sure about the last two. He was at the apartment complex. He was. She said she knew him by sight. They had gotten into an argument. Does that mean he went to where the car was seen? Correct. There's no dispute that she saw him at the apartment. They find the tan Tahoe matching the description except for perhaps the last two numbers. It's got a warm hood. It's 3 o'clock in the morning. And then they see him out. He has the keys to that Tahoe in his pocket when he sees a block from the apartment. I guess I decided to determine the time where he was to go up into the apartment and come out and walk away. So I think if you take the 318 as approximately the time the shots were fired, the tan Tahoe I think is found about 10 minutes later, 328, at the apartment complex that is between four and seven minutes away. So he has a window of six to three minutes at that point, I think. Unless there are any further questions, we would ask this court to affirm the decision below. Thank you. Thank you, Mr Baum. Anything further, Mr Patton? Your Honor, we did argue in our motion to suppress at both pages four and five and pages nine that Lieb's statement about where Mr Pettis was located and about having time to be in were false statements. Those were argued. Your Honor, the as to the timing of when things happened, attached to the government's brief in this case, a pending hearing. I would like to make a couple of comments. One is the dispatch ticket from Champaign County police, and it has a minute and second by second blow by blow of what happened. The shots fired at 318 and Mr Baum's right. The testimony was that Ms. Russell literally had her phone in her hand saying, I'm calling the police, and that was what she claimed caused Mr. Pettis to shoot. The officers that took Mr. Pettis into account, and this was in the testimony, and I apologize, I can't remember if it was from the motion to suppress hearing or at the actual trial, was that when they said, made the comment out with one, that's when the officer who arrested Mr. Pettis walking down the street said, that's when I saw him and got out of my car. That was at 328 AM, so 10 minutes almost exactly after the call came in. Thank you, Your Honor. Thank you very much. The case is taken under advisement and the court will be in recess.